UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

CIVIL ACTION NO. 05-44-DLB

BARBARA HARRISON                                                              PLAINTIFF

vs.                    **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                            DEFENDANT

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Barbara Harrison filed an application for Supplemental Security Income (SSI) payments on October 19, 2000. (Tr. 120-26)[1] Plaintiff, who was 47 years old at the time of the hearing, has an eleventh grade formal education. She alleges a disability onset date of October 12, 2000, due to back pain and muscle spasm, spinal disc deterioration, stiffness in her neck, and arthritis, some or all of which cause symptoms in her hands, legs, and feet; poor hearing and vision; asthma and allergies; varicose veins; vertigo, chronic

---

[1]Plaintiff filed two previous SSI applications. The first was on June 25, 1996. No appeal was taken after initial denial of that first application. The second was on March 27, 1999. That application proceeded through to hearing, and by decision of September 11, 2000, the ALJ found Plaintiff not disabled. (Tr. 65-79) The Appeals Council denied review on April 5, 2002 (tr. 91-92), with no further action by Plaintiff.

headaches, and dizziness; depression, anxiety, and nerves, resulting in problems being in crowds or in public; poor sleep; memory and concentration problems; and menopause. (Tr. 123)  Her application was denied initially (tr. 93-96 ) and on reconsideration (tr. 98-101). Plaintiff then requested a hearing before an administrative law judge, which hearing was held on July 16, 2002, in Prestonsburg, Kentucky. (Tr. 28-61) By written decision dated September 18, 2002, the ALJ ruled that Plaintiff was not under a disability and so was not eligible for SSI payments. (Tr. 14-21)  This decision was approved by the Appeals Council on December 23, 2004. (Tr. 4-6)

The instant action was filed on February 16, 2005.  It has now culminated in cross motions for summary judgment.

## II.  DISCUSSION

**A.     Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has never engaged in any substantial gainful activity. (Tr. 15) At Steps 2 and 3, the ALJ found that Plaintiff has severe impairments due to her neck, back, and lungs (asthma and allergies), depression and problems with her nerves, and borderline intellectual functioning. (Tr. 16) The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal a listed impairment found in Appendix 1 to Subpart P of Regulations No. 4. (Tr. 17)

At Step 4, the ALJ found that Plaintiff had the physical residual functional capacity (RFC) to perform a significant range of work at the light exertion level, being able to lift and carry up to twenty pounds occasionally and ten pounds frequently. He limited pushing or pulling to these weight limits, and prohibited her from prolonged walking. She can occasionally climb, bend, stoop, squat or crawl. She must avoid excessive dust, fumes or gases and work at unprotected heights or around dangerous, moving machinery. (Tr. 20) Due to her mental impairments, nonexertionally she is moderately limited in her ability to

3

understand, remember, and carry out detailed instructions, to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances. She has moderate ability to interact appropriately with the general public.  While she reads at a sixth grade level and performs math at a fifth grade level, she has the basic mental skills to adequately understand and recall simple tasks, complete mental aspects of work without excessive productivity demands, tolerate co-workers, and make needed changes at work. (Tr. 20)

Because Plaintiff has no past relevant work, the ALJ proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found that there are light and sedentary jobs existing in significant numbers in the national economy that Plaintiff could perform, including kitchen prep worker and machine tender at the light level, and sewing machine operator and hand packer and packager at the sedentary level. (Tr. 19)  This conclusion resulted from testimony by a vocational expert ("VE"), in response to hypothetical questions involving a person of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 59-60)

**C.   Analysis**

Plaintiff raises one challenge in her appeal.  She argues that the decision was not supported by substantial evidence because the ALJ's decision does not comport with *Drummond v. Commissioner of Social Security's* requirement that an ALJ in a subsequent proceeding abide by prior administrative findings absent evidence of improvement or changed circumstances.  *Drummond,* 126 F.3d 837, 842 (6th Cir. 1997).  The burden is on the Commissioner to prove changed circumstances.  *Id.* at 843.

4

In this case, ALJ Andrus issued a September 11, 2000, decision on Plaintiff's prior SSI application, concluding Plaintiff was not disabled because she retained the capacity to perform work at the light exertional level. (Tr. 65-78) Thus, under *Drummond* ALJ Gitlow is bound by this finding, absent evidence of improvement.

In adjudicating Plaintiff's subsequent application, ALJ Gitlow also found Plaintiff to be capable of sustained employment at a light exertion level. (Tr. 18, 21) However, Plaintiff's *Drummond* challenge here is more specific. Namely, that ALJ Gitlow did not include in his RFC the vision restriction found by ALJ Andrus. Judge Andrus had previously found that

> The claimant retains the residual functional capacity to perform the exertional demands of light work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds; . . . . The claimant's capacity for light work is diminished by significant additional limitations **as she must be restricted to work involving 20/70 vision best corrected to 20/20 vision,** no work at heights, around open dangerous machinery, and in environments with excessive dust or fumes, must be given a sit/stand option at thirty minute intervals, and is restricted to simple routine work.

(Tr. 78)(emphasis added). In the decision under review, ALJ Gitlow held Plaintiff had the RFC

> to perform light work, lifting 10 pounds frequently and 20 pounds occasionally. She can push or pull only to the weight limits. She can do no prolonged walking. She can only occasionally climb, bend, stoop, squat or crawl. She must avoid excessive dust, fumes or gases and avoid work at unprotected heights or around dangerous, moving machinery. She has moderately limited ability to understand, remember, and carry out detailed instructions. She has moderate ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She has moderate ability to interact appropriately with the general public. But she retains the basic mental skills to adequately understand and recall simple tasks; to complete mental aspects of work without excessive productivity demands; to tolerate co-workers and make needed changes at work. She reads at a 6th-grade level and performs math at a 5th-grade level.

5

(Tr. 20) Thus, Judge Gitlow does not mention or reference Plaintiff's visual acuity in his RFC.

Judge Gitlow's decision does, however, evidence his awareness and application of the standard called for by *Drummond*. He, too, found that Plaintiff could perform light work. (Tr. 18) He also discusses most of the ALJ's prior findings and expressly notes that he adopts them, with the exception of the 30-minute sit/stand option. He also explains why he rejects this limitation. (Tr. 18-19)[2] But as Plaintiff correctly notes, ALJ Gitlow did not specifically note or comment upon the prior reference to being "restricted to work involving 20/70 vision best corrected to 20/20 vision."

Since the prior determination, Plaintiff has been examined by Dr. Stephen Nutter. (Tr. 200-06) Upon examination he found Plaintiff's visual acuity to be 20/30 in the right eye and 20/30 in the left eye, without corrective lenses. She had normal visual fields by confrontation. (Tr. 202) Dr. Nutter's overall findings did not suggest any limitations or restrictions due to her vision. (Tr. 205) Dr. Timothy Gregg prepared a Physical RFC after being provided with the prior ALJ's decision and the medical evidence, including Dr. Nutter's report. (Tr. 207-14) He marks no particular limitation under the visual limitations section of the assessment and notes, consistent with the prior ALJ's finding, "vision 20/70 corrected to 20/20." (Tr. 210)

Any claim that, with reading glasses when appropriate, Plaintiff nonetheless now has an eye or vision problem that results in work impairments seems spurious. ALJ Gitlow imposed no visual restrictions or limitations. He does refer to Dr. Nutter's exam of Plaintiff's vision and the doctor's findings in his decision. (Tr. 16) Judge Gitlow also notes she related

---

[2]Plaintiff does not challenge on appeal this sit/stand option change between the prior and subsequent findings.

6

at the hearing that she now needs and uses reading glasses. (Tr. 17) In this regard, Plaintiff testified as follows:

> Q. All right. Now your vision, do you wear glasses?
> A  I wear reading glasses.
> Q. How is your vision when you have glasses?
> A. You mean how –
> Q. How well do you see if you're wearing glasses? Do the glasses help you?
> A. I can – if I'm wearing – if there's – if I don't have my glasses on I can't see how to read this close, if I don't have my glasses on.
> Q. All right. So do you see better far away or up close?
> A. Far away.
> Q. All right. And do you have any glasses given to you by a doctor or optometrist or eye doctor? Do you have any glasses now other than reading glasses?
> A. No.

(Tr. 46-47) This is consistent with the fact that in articulating on her application what impairments Plaintiff believes render her disabled, the only visually-related impairment noted is that she needs reading glasses. (Tr. 123)

All of the information outlined above has been considered by the Court, along with the parties' briefs and the administrative record as a whole. The latter ALJ's failure to duplicate the prior ALJ's statement about Plaintiff's vision does not violate *Drummond*, nor is it appropriate either to conclude ALJ Gitlow neglected to consider this information because it was not expressly referred to by him, or that it must be expressly referred to in order to comply with *Drummond's* holding.

ALJ Gitlow found Plaintiff's vision impairment to be less than severe. (Tr. 16) ALJ Andrus also found her alleged impairment of "poor vision" on prior application to be less than severe. (Tr. 67) This finding of no severe impairment attributable to her vision is driven by the fact that her vision was correctable to 20/20 with lenses as found by the prior ALJ (tr. 78) and was reported at 20/30 with no visual limitations or restrictions noted by the

subsequent examiner (tr. 16). It is also consistent with Plaintiff's own testimony and the ALJ's notation that her only vision limitation is seeing up close, corrected by use of her reading glasses. (Tr. 17, 46-47)

While it is true that ALJ Andrus remarked she is "restricted" to work involving 20/70 vision best corrected to 20/20, the Court does not view this, at least for purposes of complying with *Drummond*, as a formal finding of a work *restriction* or *limitation* that must be adopted by the ALJ absent evidence of improvement or changed circumstances. As the Sixth Circuit has noted, "to the layman 20/20 vision is normal vision." *Jenkins v. Gardner*, 430 F.2d 243, 247 (6th Cir. 1970), *cert. denied,* 400 U.S. 1001 (1971). No visual restrictions or limitations directly impacting Plaintiff's ability to perform light exertion work were identified by ALJ Andrus. Nor would one interpret having normal vision, either naturally and/or through use of reading glasses, as a restriction or limitation that must be expressly adopted by ALJ Gitlow under *res judicata* principles and also identified by him in presenting a hypothetical to the VE. It is axiomatic that an ALJ typically does not convey to a VE that a claimant has vision within the normal range. *Drummond* does not change this merely because a prior ALJ made a finding that a claimant has normal vision. Absent some particularized visual difficulty experienced by a claimant, or a unique job or industry requiring unusually good vision to perform the work, a basic presumption exists that normal vision is sufficient for the work and that the claimant possesses normal vision. Simply stated, an ALJ's failure to expressly state the obvious does not violate *Drummond.*

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

Dated this 3rd day of March, 2006.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-44-HarrisonMOO.wpd